Paul L. HANES, as Trustee in Bankruptcy of Television Productions International, Inc., Plaintiff-Appellee,

v.

CROWN CAMERA SALES, INC., d/b/a Crown Camera Exchange, Defendant-Appellant.

No. 72–1942

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1972.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Walter V. Beasley, Atlanta, Ga., for defendant-appellant.

Gus H. Small, Jr., Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

PER CURIAM:

We affirm the judgment below on the basis of the trial judge's order granting appellee's motion for summary judgment, a copy of which order is attached to this opinion as an appendix.

Affirmed.

## APPENDIX

## ORDER

(Number and Title Omitted)

Filed: Feb. 17, 1972.

This is an action brought pursuant to the provisions of Section 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1970) by plaintiff as trustee in bankruptcy for Television Productions International, Inc. ["TPI"] to recover as voidable preferences three payments totaling $10,325.33 paid by the bankrupt to defendant. The matter is now before the court on plaintiff's motion for summary judgment or, alternatively, partial summary judgment.

The facts are that TPI had the prospect of getting a contract from the Atlanta Hawks basketball team to provide television lighting for games played at the Georgia Tech coliseum. TPI made arrangements to purchase certain lighting fixtures and lamps from defendant in order to fulfill its contract with the Atlanta Hawks. These arrangements were confirmed in a letter dated September 11, 1970 from TPI to defendant which said in part:

"This is to confirm in writing the order for fixtures and lamps about which we spoke Thursday, Sept. 10, 1970.

"It serves as a definite order, in contract, to purchase through Crown Camera Exchange the following items:

\*     \*     \*     \*     \*     \*

"It is agreed that the contract monies received from the Atlanta Hawks basketball office for lighting Alexander Memorial Coliseum will be put in full for payment for these fixtures and lamps."

Defendant delivered the equipment during October and November, and on December 3, 1970 the Board of Directors of TPI passed a resolution authorizing the officers to assign invoice No. 0370 (to be presented to the Atlanta Hawks) to defendant. That same day a formal assignment of the invoice was executed by the president of TPI. On December 15 TPI received $1800 from the Atlanta Hawks as payment in full for invoice No. 0370 and the following day this sum was paid by TPI to defendant. On February 18, 1971, the president of TPI executed an assignment of invoices No. 0433 (presented to the Atlanta Hawks) and No. 1436 (presented to television station WSMW-TV of Worcester, Massachusetts) to defendant. TPI received the amounts due on these invoices, and on February 26 and March 12 made payments of $2,000 and $6,525.33 to defendant, thereby satisfying the account in full for the fixtures and lamps. TPI filed its petition and was adjudged bankrupt on March 18, 1971.

Section 60 of the Bankruptcy Act provides in part as follows:

"(a)(1) A preference is a transfer, as defined in this title, of any of the

property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

\* \* \* \* \* \*

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property \* \* \* . . . . For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

The parties do not dispute that the three payments made by TPI to defendant were transfers of property by a debtor, while insolvent, made within four months before the filing of a petition in bankruptcy, for the benefit of a creditor, who had reasonable cause to believe that the debtor was insolvent, the effect of which was to prefer that creditor. The only question to be determined by this court is whether the transfers were made "for or on account of an antecedent debt." On this issue defendant contends that the letter of September 11, 1970 was an assignment of the proceeds of the Atlanta Hawks contract and that the transfers to defendant of those proceeds, in consequence, were not "for or on account of an antecedent debt." Plaintiff's position is that the letter was no more than a promise to pay from a particular source, and that the subsequent transfers were payments "for or on account of an antecedent debt", preferential and voidable.

If the letter of September 11, 1970 was a valid assignment, the subsequent three transfers would not be considered preferences because defendant gave fair and present consideration—the fixtures and lamps—for the purported assignment. Shaw v. Walter E. Heller & Co., 385 F.2d 353 (5th Cir. 1967), cert. denied, 390 U.S. 1003, 88 S.Ct. 1248, 20 L. Ed.2d 104 (1968) ; Wolf v. Aero Factors Corp., 221 F.2d 291 (2d Cir. 1955). In such a case the transfers would represent the completion of an exchange of property of equal value rather than payments "for or on account of an antecedent debt." California Mercury Record Distributors, Inc. v. Phelps, 283 F.2d 261 (9th Cir. 1960). On the other hand, if the letter was not an assignment but merely a promise to pay from a particular source, the transfers would represent payments in satisfaction of a pre-existing debt and would be preferential. Shiro v. Drew, 174 F.Supp. 495 (D.Me. 1959). The proper construction of the September 11th letter is controlled by Georgia law. In re Rosen, 157 F.2d 997 (3d Cir. 1946).

█ No formal language is necessary under Georgia law to create a legal assignment, and if the language used in a transaction shows the intention of the owner of a right to transfer it instantly so that it becomes the property of the transferee at the time of the transaction, a legal assignment exists. First State Bank v. Hall Flooring Co., 103 Ga.App. 270, 118 S.E.2d 856 (1961). The language of the September 11th letter, however, does not evidence such an intention on the part of TPI. On the contrary, the language shows that TPI intended itself to receive the contract monies from the Atlanta Hawks and then apply such monies as payment for the fixtures and lamps purchased from defendant. It is undisputed that this is exactly what later happened. The court

concludes that the September 11th letter did not create a legal assignment.

■ Nevertheless, under Georgia law an equitable assignment will be inferred if the facts and circumstances of a transaction not only raise an equity between the purported assignor and assignee but also show that the parties contemplated an immediate change of ownership with respect to the particular fund in question to take effect at the time of the transaction rather than in the future when the fund should be collected or realized. Jones v. Glover, 93 Ga. 484, 21 S.E. 50 (1893); Schaar Construction Co. v. Schaar, 114 Ga.App. 365, 151 S.E.2d 477 (1966). The letter of September 11 provides that the contract monies "received from the Atlanta Hawks"—which must be taken to mean "which *will* be received" since at the time of the letter TPI had not received any money from the Atlanta Hawks— for the lighting at the Georgia Tech coliseum "will be put" in full for payment on the fixtures and lamps. This amounts to a contract for a future payment from a particular source. There is no indication of a present surrender of control or an immediate transfer of ownership. Indeed, the fact that TPI deemed it necessary to pass a corporate resolution and execute formal assignments in December and February suggests that it did not view the September 11th letter as accomplishing this purpose.

■ The court concludes that the September 11th letter was an agreement to pay in the future from a particular source and not an assignment. The three transfers by TPI to defendant were, accordingly, payments made "for or on account of an antecedent debt" within the meaning of Section 60(a) of the Bankruptcy Act, preferential and voidable. Since all the other elements of a voidable preference are present, plaintiff's motion will be granted. Shiro v. Drew, *supra*.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New

For the foregoing reasons, it is hereby ordered, decreed and adjudged that plaintiff's motion for summary judgment is granted and plaintiff shall have judgment over and against defendant in the full amount claimed plus allowable costs.