### In re MERTS EQUIPMENT COMPANY, Bankrupt.

### UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant,

v.

### J. L. LEACH, trustee, Appellee.

### No. 76–56–ALB.

United States District Court, M. D. Georgia, Albany Division.

Oct. 4, 1977.

OWENS, District Judge:

In this bankruptcy appeal, United States Fidelity and Guaranty Co. (U.S.F. & G.) challenges the decision of the bankruptcy judge that it had no secured interest in the bankrupt's equipment. U.S.F. & G. claimed it was secured by virtue of a master surety agreement which it entered into with the bankrupt. The agreement supposedly created an equitable lien on the equipment in question. The bankruptcy judge refused to find such a lien and held that in the absence of a security interest perfected in accordance with the Uniform Commercial Code, the surety could not prevail over the trustee with respect to the bankrupt's equipment.

### I.

On April 11, 1974, Merts Equipment Company (Merts), the bankrupt, and R. H. Coody & Associates, Inc. (Coody) entered into a master surety agreement with U.S.F. & G. in which Merts promised to indemnify U.S.F. & G. against all loss occasioned by the default of Coody in any of its several construction projects. Although the record is not clear on this point, Merts apparently had an interest in the ability of Coody to post payment and performance bonds on various projects because Merts leased to Coody construction equipment necessary for the completion of the projects. During a period of approximately six months in 1974, U.S.F. & G. issued eight bonds on four separate Coody projects. However, in June 1975, Coody notified U.S.F. & G. that it would not complete the projects in question. The surety completed them as it was obligated to do under the bonds and, as a result, sustained losses of $850,000 on the four projects. In March 1976, the surety sought indemnification from its principals, Coody and Merts and, in consequence, Merts chose to go into bankruptcy. The trustee sold the equipment at public sale and U.S.F. & G. now seeks a priority with respect to the proceeds of that sale.

The surety argues that upon default of the contract the master surety agreement assigned automatically all contract fund re-

Walter H. Burt, III, Burt, Burt & Rentz, Albany, Ga., Jeffrey L. Sakas, Jessee, Ritchie & Duncan, Atlanta, Ga., for U. S. Fidelity & Guaranty.

E. Lewis Adams, Albany, Ga., for Trustee J. L. Leach, Albany, Ga.

tainages and all equipment of the contractor, thereby creating an equitable lien on the equipment of the principal-indemnitor, Merts. U.S.F. & G. further argues that this equitable lien is not subject to Article 9 of the U.C.C. and cites as authority for this proposition a recent Georgia court of appeals decision which held that the surety's equitable lien in contract retainages will prevail over an assignee bank's U.C.C. secured interest in those funds. *Argonaut Ins. Co. v. C & S Bank of Tifton,* 140 Ga.App. 807, 232 S.E.2d 135 (1976). In the instant case, however, the bankruptcy judge found compelling the distinction between equipment and contract funds, holding that equipment is always subject to the U.C.C. filing requirements. The bankruptcy judge viewed Merts not as the chief principal under suretyship, but rather as indemnitor. Thus he concluded that "[a]n unperfected security interest cannot ride piggy-back on an equitable lien or subrogation right in order to give the surety priority over the general creditors of the principal, much less over general creditors of an indemnitor."

The trustee argues in this appeal that the bankruptcy judge's decision must be sustained for the sole reason that the surety did not file a financing statement as required by the U.C.C.

## II.

The law is clear that the surety enjoys a special place with respect to retained contract funds which become available because the surety completes a construction project. Several courts have held that the surety has an equitable lien upon the contract funds and that by virtue of this lien the surety takes precedence over the trustee in bankruptcy of a bankrupt contractor. Collier's 4A *Bankruptcy* ¶ 70.62. This same line of cases has been followed in Georgia in *Argonaut Ins. Co. v. C & S Bank of Tifton, supra,* which involved not a trustee as hypothetical lien creditor, but rather the actual secured assignees of the contract funds who had perfected their secured interest in the funds in accordance with Article 9 of Geor-

gia's Uniform Commercial Code. The court reasoned that because of the equitable doctrine of subrogation, the surety had priority over secured creditors to contract funds which became available as a result of the surety's completion of projects upon which the debtor-contractor had defaulted.

The equitable rights of the surety in these cases is founded upon the common sense proposition that the contract retainage funds would never become available to any creditor unless the surety completed the project. Stated differently, the contract funds were never really in the possession of the contractor, either as an asset for his general creditors or as collateral for the secured creditor, because the payment of the funds is conditioned upon the completion of the construction project:

> This is not an interest in or lien upon, property or funds in the possession or control of the bankrupt [contractor]. Until the obligation to the city [owner] was fulfilled the bankrupt had no claim upon the retained funds.

*In re Bray,* 127 F.Supp. 627, 628 (D.Conn. 1954).

Thus, the surety who completes the project is given first chance at the contract funds even if other creditors of the bankrupt contractor have previously secured their interest in the funds. The consequence of this equitable lien or equitable subrogation doctrine is that an exception is created to the general rule that only those creditors who perfect a security interest by following the U.C.C. or by obtaining a lien judgment can prevail over the trustee in bankruptcy, who, as of the day of the filing of the petition, stands in the position of a judgment creditor.

The question in this case, however, is whether the surety can assert this equitable lien in the *equipment* of the bankrupt. Although the bankruptcy judge clearly drew a distinction between Merts, as indemnitor, and Coody, as contractor-principal, this court shall assume that Merts stood as if it were the contractor. Indeed, on the Master Surety agreement, Merts signed as a principal and warranted that it had a substantial,

material interest in the completion of the projects in question. Thus, assuming Merts can be deemed the contractor, the question becomes whether U.S.F. & G. as surety shall have priority over the trustee with respect to the equipment of Merts.

■ The basis of any priority must be the result of an equitable lien or right of subrogation. However, the rationale for according such a lien to the surety does not apply in the case of equipment. Unlike *Argonaut,* in which the right to the contract funds is created by the surety's performance, the equipment in question was fully in the possession of the bankrupt and ownership was not in any way conditioned upon contractual performance. Stated differently, the surety has done nothing with respect to the bankrupt creditor's equipment which raises up in the surety an equity superior to that of later judgment creditors. The equitable lien protects the surety whose performance enables funds to become available, but in the case of equipment the surety is in no better position than any other unsecured creditor. The surety cannot accede to the general assets of the contractor absent some assignment of title or attachment through a perfected security interests. In conclusion, because no equities arise in favor of the surety with respect to the bankrupt contractor's equipment, the surety stands as general unsecured creditor who must defer to the trustee. *Aetna Casualty & Surety Co. v. J. F. Brunken & Sons, Inc.,* 357 F.Supp. 290 (D.S.Dakota 1973).

The appellant U.S.F. & G. vigorously argues that a case applying Georgia law, *Traveler's Indemnity Co. v. West Georgia National Bank,* 387 F.Supp. 1090 (N.D.Ga. 1974), has already settled this question by allowing the surety a priority in the contractor's equipment. In that case, the surety prevailed over a judgment creditor bank because the court held that the surety agreement specifically passed title to all construction equipment on the job site upon the contractor's default. Thus, the surety was entitled to the proceeds of the sale of the equipment. The court described this passing of title as a "prior equitable assignment" which would defeat subsequent creditors claiming the fund pursuant to a judgment.

■ In this case there has been no equitable assignment. Under Georgia decisional law, an equitable assignment occurs only when there is an intent to immediately transfer title to specific property. *Blount v. Metropolitan Life Ins. Co.,* 192 Ga. 325, 15 S.E.2d 413 (1941); *First State Bank v. Hall Flooring Co.,* 103 Ga.App. 270, 118 S.E.2d 856 (1961); *see Hanes v. Crown Camera Sales, Inc.,* 468 F.2d 1318 (5th Cir. 1972). The transfer of the master surety agreement between Merts and U.S.F. & G. was not immediate, did not purport to pass title, and was not specific about the property it related to.[1] Nor did this master surety agreement create an equitable lien. Under Georgia law equitable liens are available only in unusual circumstances, such as fraud, *First National Bank v. Hill,* 406

1. The contract provides in relevant portion as follows:

"(B) In the event of: (1) any breach of any of the agreements herein; (2) any breach, delay or default in any contract secured by BOND(S); (3) any breach or default of BOND(S); (4) any change or threat of change in the character, identity, control, beneficial ownership or existence of PRINCIPAL; (5) any assignment by PRINCIPAL for the benefit of creditors; (6) the appointment of a receiver or trustee or any application for appointment of a receiver or trustee for PRINCIPAL, whether insolvent or not; (7) any proceedings or the exercise of any rights by any PERSON which deprives or impairs PRINCIPAL'S use of its plant, machinery, equipment, plans, drawings, tools, supplies or

materials; (8) upon the happening of any event other than those specified in (1) through (7) and completely different from those events, which, in its sole opinion may expose SURETY to loss, cost or expense:

(a) SURETY shall have the right, in its discretion, to take possession of any part or all of the work under contract(s) secured by BOND(S) (together with plant, machinery, equipment, job books and records, plans, drawings, tools, supplies of material wherever located and owned or useable by PRINCIPAL) and, at the expense of UNDERSIGNED, to complete or cause completion of any such work, or relet or consent to the reletting or completion of such contract(s). . . ."

F.Supp. 351 (N.D.Ga.1975); *Jones v. Ely*, 95 Ga.App. 4, 96 S.E.2d 536 (1957) (quantum meruit) and if a statutory method exists for asserting a lien, then a creditor is obliged to follow the statute. *G.E.C. Corp. v. Levy*, 119 Ga.App. 59, 166 S.E.2d 376 (1969). The statutory remedy available to U.S.F. & G. was the simple filing of a security interest pursuant to the U.C.C. Having failed to follow this course, it cannot now circumvent the law's requirements by the mere assertion that the contract created an equitable lien. Because no equitable assignment or equitable lien arose in this case, the *Traveler's Indemnity* decision does not apply.

In conclusion, the bankruptcy judge was correct in deciding that the proceeds from the sale of the equipment was not subject to the equitable rights of the surety and that, in the absence of an appropriately filed security interest, the trustee would have a priority over these monies. The decision of the bankruptcy judge is therefore affirmed.

SO ORDERED, this 3rd day of October, 1977.