**In the Matter of Frank M. FLANDERS, Debtor.**

**Bankruptcy No. 84–30134–Ath.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Dec. 21, 1984.

Thomas P. Stamps, Atlanta, Ga., for debtor.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for Farmers Home Administration.

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF THE CASE

On June 1, 1984, Frank M. Flanders, Debtor, filed a petition under Chapter 11 of

the United States Bankruptcy Code. On October 23, 1984, Debtor filed a "Motion to Use Cash Collateral and for Determination of Secured Status." The motion asks the Court to determine the amount of the secured claim held by the Farmers Home Administration, United States Department of Agriculture (FmHA); to order FmHA to disburse certain funds to Debtor; and to allow Debtor to use FmHA's cash collateral. On November 7, 1984, FmHA filed a "Motion to Prohibit Use of Cash Collateral and Motion for Adequate Protection."

The motions came on for a hearing on November 13, 1984. After Debtor and FmHA presented evidence, the hearing was continued until December 20, 1984. The Court stated at the November 13, 1984, hearing that prior to commencing the continued hearing, it would decide whether Debtor is entitled to recover $12,396.65 from FmHA, which sum represents a rental payment to Debtor for his lease of a tobacco allotment. The following findings of fact and conclusions of law are published in accordance with the Court's direction.

### FINDINGS OF FACT

Debtor owns approximately 1,357 cultivable acres of farmland and has a life estate in an additional 978 cultivable acres of farmland, all of which is located in Emanuel County, Georgia.

Beginning in February of 1978, Debtor obtained several loans from FmHA. To secure his debt with FmHA, Debtor executed deeds to secure debt on the 1,357 acres of farmland, which gave FmHA a first lien on the 1,357 acres. In addition to the farmland described in the deeds to secure debt, the security deeds granted to FmHA a lien on "all rights, interests, easements, hereditaments and appurtenances thereto belonging, the rents, issues, and profits thereof and revenues and income therefrom. . . ." FmHA has no lien on the 978 acres in which Debtor holds a life estate.

At an undisclosed time, Debtor received an agricultural allotment to grow tobacco under the Agricultural Adjustment Act of 1938.[1] The allotment is based on Debtor's farm number at the county Agricultural Stablilization and Conservation Service (ASCS) office, and the number includes both the 1,357 and the 978 acres. There is no evidence before the Court as to how much of the allotment is attributable to the 1,357 acres and how much is attributable to the 978 acres. The evidence reveals that the parties are attempting to obtain this information from the county ASCS office, and that they expect to receive the information shortly.

On January 25, 1984, Debtor executed an FmHA form 465–1, which is entitled "Application for Partial Release, Subordination, or Consent." The application states that Debtor will not be growing tobacco in 1984, and that he therefore needs to lease his allotment.[2] The application further provides that the allotment was to be leased to Mr. M.O. Collins for $12,396.65, and that Debtor was "To apply [the $12,396.65] to FmHA's indebtedness as an extra payment." The application was approved by Ms. Deborah Pennington, the FmHA county supervisor for Emanuel County, Georgia.

On October 2, 1984, FmHA received the $12,396.65 rent check. Receipt of the $12,396.65 occurred after the filing of Debtor's Chapter 11 case and is postbankruptcy.

### CONCLUSIONS OF LAW

The question presented is whether FmHA has a security interest in the $12,396.65 rent check. If FmHA does not have a security interest in the check, Debtor has a superior interest in the check, 11 U.S.C.A. §§ 544, 1107 (West 1979), and FmHA would be required to turn the check's proceeds over to Debtor, 11 U.S.C.A. § 550 (West 1979).

FmHA first asserts that it has a security interest in the check by virtue of the deeds

---

1. 7 U.S.C.A. §§ 1281–1393 (West 1973 & Supp. 1984).

2. The allotment may be decreased if it is not used. 7 CFR § 725.73 (1984).

to secure debt, which granted to FmHA legal title to the 1,357 acres of farmland. O.C.G.A. § 44–14–60 (Michie 1982).

Under 7 U.S.C.A. § 1313(b) (West 1973), a tobacco allotment is made to a farm, not an individual farmer. However, the operator of a farm may transfer or lease the farm's allotment under certain circumstances. 7 U.S.C.A. § 1314b (West Supp. 1984); *Conifer Farms, Inc. v. Brent*, 237 Ga. 42, 226 S.E.2d 585 (1976).

In *Conbustion Engineering, Inc. v. Norris*, 246 Ga. 413, 271 S.E.2d 813 (1980), the court held that when a farm is transferred, the allotment made to the farm passes to the transferee, unless the allotment is specifically reserved by the transferor. The court reasoned that the allotments are made to the farmland, and that they therefore run with the land, unless reserved by the transferor.

In this case, Debtor executed several deeds to secure debt on the 1,357 acres of farmland. Since the allotment on the 1,357 acres would pass to FmHA if that acreage was sold to FmHA, unless specifically reserved, it necessarily follows that Debtor's interest in the allotment was conveyed to FmHA by virtue of the deeds to secure debt. *See* O.C.G.A. § 44–14–60 (Michie 1982) (security deed affects a transfer of title); Pindar, Ga. Real Estate Law § 21–7 (1979) ("[A]ny land or interest in land which may be conveyed by ordinary deed, may also be conveyed to secure a debt."). Debtor did not specifically reserve the allotment from the deeds to secure debt, and under the rationale of *Norris*, the allotment is security for FmHA's debt.

■ FmHA is thus entitled to that portion of the $12,396.65 that is attributable to the farmland covered by the deeds to secure debt. At the hearing, it was unknown how much of the allotment was based on the farmland covered by the deeds to secure debt and how much was based on the land in which FmHA held no lien. Since this information is being obtained from the county ASCS office, the Court will direct that the parties make a proper allocation when the information is available.

FmHA further argues that it is entitled to all of the check because Debtor assigned the $12,396.65 to FmHA in the "Application for Partial Release, Subordination, or Consent." The Court, however, cannot agree.

■ Generally, a valid assignment made prior to a bankruptcy filing is enforceable in a bankruptcy proceeding since the right to payment relates back to the time of the assignment. *King v. Gilbert*, 569 F.2d 398 (5th Cir.1978). Accordingly, property assigned does not become property of the bankruptcy estate. *Harris v. Farmers Home Administration (In re Bargstedt)*, 7 B.R. 556, 6 Bankr.Ct.Dec. 1428 (Bankr.M.D.Ga.1980). *See also United States v. Mercury Motor Express, Inc.*, 294 F.Supp. 919 (S.D.Ga.1968).

■ Under Georgia law, an assignment is defined as follows: "Any language, however informal, will be sufficient to create a legal assignment, if it shows the intention of the owner of the right to transfer it instantly, so that it will be the property of the transferee." *First State Bank v. Hall Flooring Co.*, 103 Ga.App. 270, 271, 118 S.E.2d 856, 857 (1961). In order for language to constitute an assignment, the language must contain words sufficient to pass title to the property. *Washington Loan and Banking Co. v. Guin*, 236 Ga. 779, 225 S.E.2d 318 (1976). *See also Trust Co. Bank v. Walker (In re Walker)*, 35 B.R. 237 (Bankr.N.D.Ga.1983).

In *Hanes v. Crown Camera Sales, Inc.*, 468 F.2d 1318 (5th Cir.1972), the court held that in order to create an assignment under Georgia law there must be an "intention of the owner of a right to transfer it instantly so that it becomes property of the transferee at the time of the transaction." *Id.* at 1320. The Court noted that a legal assignment would not include an agreement to pay in the future from a particular source.

In *Hanes*, the following letter was argued to be an assignment under Georgia law: "It is agreed that the contract monies received from the Atlanta Hawks basket-

ball office for lighting Alexander Memorial Coliseum will be put in full for payment for these fixtures and lamps." The court held that no assignment was intended by the letter. Rather, the court held that the letter merely evidenced a contract to receive monies from a particular source and to apply the monies as payment for the fixtures and lamps.

The court went on to discuss an equitable assignment under Georgia law:

> [U]nder Georgia law an equitable assignment will be inferred if the facts and circumstances of a transaction not only raise an equity between the purported assignor and assignee but also show that the parties contemplated an immediate change of ownership with respect to the particular fund in question to take effect at the time of the transaction rather than in the future when the fund should be collected or realized....

*Id.* at 1321.

The court then decided that the letter would not constitute an equitable assignment:

> The letter of September 11 provides that the contract monies "received from the Atlanta Hawks"—which must be taken to mean "which *will* be received" since at the time of the letter TPI had not received any money from the Atlanta Hawks—for the lighting at the Georgia Tech coliseum "will be put" in full for payment on the fixtures and lamps. This amounts to a contract for a future payment from a particular source. There is no indication of a present surrender of control or an immediate transfer of ownership....

*Id.* at 1321 (emphasis in original).

■ In the instant case, the "Application for Partial Release, Subordination, or Consent" does not create a legal or equitable assignment under Georgia law. In paragraph eight, the document states: "[I]t is proposed to use the proceeds [of the lease] as follows: To apply to FmHA indebtedness as an extra payment." This language does not manifest an intention to transfer title to the proceeds. Rather, it is an

agreement by Debtor to pay FmHA in the future when Debtor is paid by Mr. Collins for the lease of the allotment.