908 F.2d 859
 59 USLW 2122, 23 Collier Bankr.Cas.2d 763,
20 Bankr.Ct.Dec. 1345, Bankr. L. Rep. P 73,572
 In re: Jesse C. JONES, aka J.C. Jones, aka Jack C. Jones,
dba J.C. Jones Farms, Debtor.
The FIRST NATIONAL BANK OF ATLANTA, Successor in Interest to
Bank of Commerce, Plaintiff-Appellant,
v.
Sherman WILLIS, as Trustee of the Estate of Jesse C. Jones,
aka J.C. Jones, aka Jack C. Jones, dba J.C. Jones
Farms, Defendant-Appellee.
 No. 89-8617.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 9, 1990.
 
 1
 Howard S. McKelvey, Jr., Americus, Ga., for plaintiff-appellant.
 
 
 2
 Timothy O. Davis, Gardner, Willis, Sweat & Goldsmith, Albany, Ga., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Middle District of Georgia.
 
 
 4
 Before CLARK, Circuit Judge, RONEY*, Senior Circuit Judge, and ATKINS**, Senior District Judge.
 
 ATKINS, Senior District Judge:
 
 5
 This case presents an issue of first impression in this circuit concerning the effect of section 552(b) of the Bankruptcy Code on the rights of a secured creditor holding a whole life insurance policy on the debtor's life. Specifically, we must determine whether the creditor's security interest extends to the increase in the cash surrender value of the debtor's life insurance policy by the subsequent payments of premiums on the policy after the commencement of the case. Both the bankruptcy court and the district court ruled that the creditor's security interest did not extend to the post-petition increase in the cash surrender value of the life insurance policy which was property acquired by the estate after the commencement of the case within the meaning of section 552(b) of the Bankruptcy Code. We agree and affirm the rulings of the courts below.
 
 I. FACTS
 
 6
 The debtor, on May 7, 1986 filed a petition under Chapter 11 of the Bankruptcy Code. At that time, First National Bank of Atlanta ("First Atlanta"), a creditor, held an assignment for security purposes of a whole life insurance policy on the debtor's life issued by Fidelity Bankers Life Insurance Company, which was owned by the debtor. At the time the Chapter 11 petition was filed, the cash value of the life insurance policy was $5,917.53. On September 29, 1987, the case was converted to a case under Chapter 7 of the Bankruptcy Code and a trustee was appointed.
 
 
 7
 Between the time of the filing of the Chapter 11 petition and its conversion to Chapter 7, the monthly premiums required to keep the subject life insurance policy in force were paid by the debtor's wife and son from their own separate assets. The premiums were scheduled in the policy to be Two Thousand, One Hundred Twenty-Four Dollars and Eighty-Nine Cents ($2,124.89) per month. None of these post-petition payments were paid with the assets of the debtor or of his bankruptcy estate.
 
 
 8
 In December of 1987, by consent of the trustee in the Chapter 7 proceeding and the other parties, the life insurance policy was surrendered to Fidelity Bankers Life Insurance Company for its then cash value of $21,492.27. Pursuant to a consent order, the trustee paid over to First Atlanta, the creditor holding a security interest in the policy, the sum of $5,917.53, which was the cash value of the policy on May 7, 1986, the date of the filing of the original Chapter 11 petition. The balance of $15,574.74 was put in escrow.
 
 
 9
 Subsequently, the Chapter 7 trustee of the debtor's estate filed a complaint against First Atlanta, the creditor. The trustee contended that the increase in the cash surrender value after the case was filed under Chapter 7 was after acquired property which becomes property of the estate. First Atlanta, the creditor objected, contending that the sum in question was part of the security for its loan and was either an inseparable part of its interest in the policy under its assignment or represented proceeds of its collateral to which it would also be entitled. On August 2, 1988, the United States Bankruptcy Court for the Middle District of Georgia ruled that the post-petition payments to the life insurance policy were not funds paid within the meaning of 11 U.S.C. Sec. 552, and First Atlanta's security interest did not attach to those monies.
 
 
 10
 On August 11, 1988, First Atlanta filed a Notice of Appeal to the United States District Court for the Middle District of Georgia. On July 7, 1989, the District Court affirmed the decision of the Bankruptcy Court. This appeal followed.
 
 
 11
 II. THE CREDITOR'S SECURITY INTEREST AS TO POST-PETITION PAYMENTS
 
 
 12
 The post-petition treatment of security interests is addressed in 11 U.S.C. Sec. 552. The general rule is stated in section 552(a): "[P]roperty acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. Sec. 552(a). The sole exception to the general rule of subsection (a) is provided in Sec. 552(b):
 
 
 13
 Except as provided in sections 363, 506(c), 522, 544, 545, 547, 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
 
 
 14
 11 U.S.C. Sec. 552(b) (emphasis added). The application of this exception to the instant case therefore, turns on whether the post-petition payments to the subject life insurance policy were funds paid within the meaning of 11 U.S.C. Sec. 552(b).
 
 
 15
 First Atlanta argues that the above exception applies and that the sum in question is subject to their lien. They contend that the increased cash value resulting from the post-petition payments were funds paid within the meaning of Sec. 552(b) for the reason that it was part and parcel of property which existed prior to the filing of the bankruptcy petition, and not separate, distinct and identifiable property in and of itself. The bankruptcy trustee contends that the exception does not apply and the sum in question is not subject to First Atlanta's lien.
 
 
 16
 There is no case on point on this issue. First Atlanta urges us to extend their security interest to the sum in question. However, the arguments presented in their favor are not persuasive. Instead we follow the reasoning set forth in the Bankruptcy Court's Memorandum Opinion. An analogy was made to bank accounts in which a creditor has a security interest into which deposits are made post-petition. In that situation, the bankruptcy court has held that any lien that a creditor has on the bank account is limited to the amount on deposit at the time that the case commenced. In re Executive Associates, 24 B.R. 171 (Bankr.S.D.Tex.1982). The subsequent post-petition deposits into a bank account are very similar to subsequent post-petition payments of premiums that increase the cash surrender value of a life insurance policy. In addition, analogies can also be drawn to post-petition account receivables. In re Walker, 35 B.R. 237 (Bankr.N.D.Ga.1983) (the post-petition receivable were implicitly held to be property "acquired by the estate or by the debtor after the commencement of the case").
 
 
 17
 The increased cash surrender value of the life insurance policy is not any form of "proceeds, product, offspring, rents, or profits" within the meaning of Sec. 552(b). In other words, the subsequent premium payments made by the debtor's wife and son from their own separate assets which occurred from the date of the filing of the debtor's Chapter 11 petition to its conversion to Chapter 7 was property of the estate and such funds are not subject to First Atlanta's lien.
 
 
 18
 The cash surrender value at the commencement of the case in May of 1986 was $5,917.53 which amount was paid to the creditor sometime in December of 1987. The increase in the cash surrender value from the filing of the Chapter 11 petition in May of 1986 to the conversion to a Chapter 7 proceeding on September 29, 1987 amounted to a sum of $15,574.74. Interest has accrued on this balance since it was placed in escrow. This sum of $15,574.74 and any interest which has accrued is considered to be after acquired property which becomes part of the bankruptcy estate. This increase in the cash surrender value after the commencement of the Chapter 11 proceeding pending the conversion to the Chapter 7 proceeding is not a part of the security interest for the loan.
 
 III. CONCLUSION
 
 19
 For the reasons stated in the Bankruptcy Court's Memorandum Opinion and based on the foregoing, we hold as a matter of law, that any increase in the cash surrender value of a life insurance policy, which had been assigned by the debtor to the creditor, as collateral, from the date of the filing of the debtor's Chapter 11 petition to its conversion to Chapter 7 was property of the estate and not subject to First Atlanta's lien.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation