In re TEXAS TRI–COLLAR, INC., Debtor.

FIRST NATIONAL BANK OF LAFAYETTE, Plaintiff,

v.

TEXAS TRI–COLLAR, INC., Defendant.

Bankruptcy No. 483–00168–LO.

Adv. No. 483–0075.

United States Bankruptcy Court, W.D. Louisiana.

May 17, 1983.

Christine A. March, Lafayette, La., for First National.

James E. Mouton, Lafayette, La., for Texas Tri-Collar, Inc.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter is before the court on a complaint for injunctive relief and a motion for reconsideration of an order issued by this court on March 25, 1983. Both the complaint and motion were filed by First National Bank of Lafayette ("First National").

Tri-Collar filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 25, 1983. It operated as a debtor in possession until April 8, 1983. A trustee was then appointed pursuant to the Joint Stipulation and Compromise entered into by Tri-Collar and First National and approved by this court.

On October 8, 1982, prior to the filing of the petition, Tri-Collar made a general assignment to First National of all of its existing and future accounts receivable. The effect of the filing of the petition in bankruptcy on this assignment of existing and future accounts receivable is the basis of both the complaint for injunctive relief and the motion for reconsideration.

The parties have filed a compromise agreement that resolves a number of issues that were in dispute. The agreement has already been approved by the court. The only remaining issue to be addressed by the court is whether the assignment of accounts receivable executed by the parties prior to the commencement of the case should encompass receivables generated by Tri-Collar after the filing of the petition for relief.

This court is of the opinion that the assignment of accounts receivable does not encompass receivables generated by Tri-Collar after the filing of its petition for relief. Section 552(a) of the Bankruptcy Code, concerning the postpetition effect of security interests, governs this determination. Section 552(a) provides as follows:

> Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security

agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a).

The agreement entered into by Tri-Collar and First National is entitled "Assignment and Pledge of Accounts Receivable". Pursuant to the agreement, Tri-Collar made a "general assignment of any and all of its accounts receivable now in existence and/or that may arise or hereinafter be created".

In its brief, First National seems to question whether this agreement constitutes a security agreement giving rise to a security interest in future accounts receivable or a sale resulting in complete divestiture of any property right in Tri-Collar.

First National's brief cites a number of cases for the proposition that "an assignment of receivables, whether the right to payment [arises] prepetition or post-petition, [is] a transfer, the effect of which totally exclude[s] the estate's right to it". Most of these cases, however, deal with an assignment of prepetition property or proceeds of prepetition property. While the facts in a few of these opinions are incomplete,[1] none of them clearly deals with the effect of an assignment of future accounts receivable on receivables generated by a debtor after the commencement of the case. Furthermore, applicable state law classifies this type of assignment as a pledge or lien rather than a completed sale. La.Rev.Stat. Ann. art. 9, § 3102 B.

Since this type of assignment constitutes a lien, First National's interest is a lien created by agreement, or a "security interest". *See* 11 U.S.C. § 101(37). Thus, the "Assignment and Pledge of Accounts Receivable" constitutes a "security agreement". *See* 11 U.S.C. § 101(36). Given the fact that this security agreement was entered into by Tri-Collar before the commencement of the case, and considering that the receivables generated by Tri-Collar after the filing of the petition are "property acquired by the estate or by the debtor after the commencement of the case", the lien resulting from the assignment by Tri-Collar to First National is rendered ineffective as to postpetition receivables by operation of section 552(a). *See Citizens Fidelity Bank & Trust Co. v. All-Brite Sign Service Co., Inc. (In re All-Brite Sign Service Co., Inc.),* 11 B.R. 409, 414, 7 B.C.D. 844, 847 (W.D.Ky.Bkrtcy.1981).

Section 552(b), which states the exception to the operation of section 552(a), does not assist First National in its claim that the assignment of accounts receivable should extend to receivables generated by Tri-Collar after the filing of its petition for relief. Section 552(b) provides as follows:

> Except as provided in section 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b). Since accounts receivable generated after commencement of the case are in no way proceeds, product, offspring, rents or profits of prepetition

---

1. An example of such a case is *Harris v. Farmers Home Administration (In re Bargstedt),* 7 B.R. 556 (M.D.Ga.Bkrtcy.1980). The Chapter 7 debtor had made a prepetition assignment of $4,100.00 per month of the purchase price due or to become due to it for sales of milk. The assignee received the last payment 17 days after the filing of the petition. The court found that because the assignment was valid, the payment was not property of the estate and not recoverable by the trustee. The facts given in the opinion do not indicate whether the milk was produced and sold before or after the commencement of the case. Thus, it is not clear, and, in this court's opinion, not likely, that the *Barstedt* decision allowed a prepetition security interest to extend to property acquired by the debtor after the commencement of the case.

accounts receivable, First National's security interest, pursuant to the Assignment and Pledge of Accounts Receivable, does not extend to postpetition receivables under section 552(b).

In its brief, First National claims to hold a mortgage on virtually all of Tri-Collar's prepetition inventory and equipment. To the extent Tri-Collar's postpetition receivables represent proceeds, product, offspring, rents or profits of such prepetition property over which First National holds a valid lien, section 552(b) might operate to extend the lien to Tri-Collar's postpetition receivables. The extent of such a lien would, of course, be subject to the exceptions stated in section 552(b). No evidence concerning this issue has been offered to the court. Additionally, by agreement of the parties, this issue is not before the court at this time. For these reasons, the court will refrain from making any determination of this issue.

First National's brief indicates a number of equitable grounds for allowing the Assignment and Pledge of Accounts Receivable to extend to receivables generated by Tri-Collar after commencement of the case. Section 522(b), however, only allows the court, "based on the equities of the case", to vary the extent to which a prepetition security interest attaches to proceeds, product, offspring, rents, or profits of prepetition property.

The court does not believe that equitable considerations justify allowing a prepetition security interest to extend to after-acquired property in this case. According to *Collier on Bankruptcy,* "[n]either the general rule of section 552(a) nor the exception of section 552(b) is subject expressly to the broad powers of the court under section 105(a) or under 28 U.S.C. §§ 1481 and 1651". 4 *Collier on Bankruptcy* ¶ 552.01, n. 2, at 552–3 (15th ed.). Section 105(a) of the Bankruptcy Code gives the bankruptcy court discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". An order allowing a prepetition security interest to extend to property acquired by

the debtor after commencement of the case would be in contravention of section 552(a) and its goal of bolstering the debtor's fresh start. *See id.,* n. 1, at 552–1 through 552–2.

For the foregoing reasons, the court is of the opinion that the Assignment and Pledge of Accounts Receivable executed by Tri-Collar and First National prior to the commencement of the case does not extend to accounts receivable generated by Tri-Collar after the filing of its petition for relief under Chapter 11 of the Bankruptcy Code.