In re J.L. GRAPHICS, INC., Debtor.

Dennis G. BEZANSON, Trustee,

v.

INDIAN HEAD NATIONAL BANK, Defendant.

In re CROSS BAKING CO., INC., Debtor.

NEW HAMPSHIRE BUSINESS DEVELOPMENT CORPORATION, Plaintiff,

v.

CROSS BAKING CO., INC., and Victor W. Dahar, Interim Trustee, Defendants.

Bankruptcy Nos. 85–112, 80–346. Adv. Nos. 85–56, 81–26.

United States Bankruptcy Court, D. New Hampshire.

May 8, 1986.

Sherman Horton, Nashua, N.H., for Indian Head Nat'l. Bank.

Russell Hilliard, Concord, N.H., for N.H. Bus. Dev. Corp.

Dennis Bezanson, South Portland, Me., for trustee.

Victor Dahar, trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

These cases present the troublesome question of the effect upon the legal rights of a secured lender having a floating lien upon accounts receivable when its borrower commences a Chapter 11 reorganization proceeding and the parties proceed under some tentative agreement but fail to obtain any court order authorizing post-petition borrowing and attachment of the floating lien to post-petition accounts receivable prior to the conversion of the case to a Chapter 7 liquidation proceeding.

Both cases involve essentially the same factual pattern—although the secured lenders' theories for recovery differ somewhat in the two cases—and the court will set forth its findings and conclusions as to both cases in this one Memorandum Opinion.

## PERTINENT STATUTORY PROVISIONS

In both cases no Chapter 11 trustee had been appointed and each debtor was operating as a "debtor-in-possession" during the Chapter 11 reorganization stage of the proceedings. This gave each debtor-in-possession the rights, powers and duties of a "trustee" under all pertinent statutory provisions pursuant to § 1107 of the Bankruptcy Code.

Bearing the foregoing statutory status in mind, the controlling statutory provisions in this case are as follows:

*11 U.S.C.S. § 363*

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits or property subject to a security interest as provided in section 552(b) of this title, [11 U.S.C.S. § 552(b)], whether existing before or after the commencement of a case under this title [11 U.S.C.S. §§ 1 et seq.].

\* \* \* \* \* \*

(c)(2) The Trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(c)(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (c) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

\* \* \* \* \* \*

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

*11 U.S.C.S. § 364*

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title [11 U.S.C.S. § 503(b)(1)] as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(2) secured by a lien on property of the estate that is not otherwise subject to a lien....

*11 U.S.C.S. § 552*

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title [11 USCS §§ 363, 506(c), 522, 544, 545, 547 and 548], if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

## J.L. GRAPHICS, INC.

The Chapter 11 petition by J.L. Graphics, Inc. was filed on March 26, 1985. On April 5, 1985 the defendant, Indian Head National Bank, filed a motion for relief from the section 362 automatic stay to permit it to exercise its rights to collect the receivables for its collateral. This motion also requests adequate protection and prevention of use of cash collateral.

The Bank's April 5th motion was set for a hearing on April 29, 1985. No request to expedite that hearing was made to the court.

Shortly after the filing of the Chapter 11 petition the Bank and the debtor engaged in negotiations for a stipulated cash collateral agreement which would allow the debtor to continue using receivable collections from pre-petition accounts receivable, and would provide that the debtor was authorized to continue borrowing from the Bank and would grant the Bank a continuing lien on post-petition receivables.

The parties orally agreed to such an arrangement, but for various reasons the formal written stipulated agreement was not executed and signed until April 24, 1985. The oral agreement included the Bank's consent to the debtor's continuing to use collections from the pre-petition receivables. The oral agreement, and the written agreement, were conditioned upon ultimate approval by the court after notice to creditors and a hearing.

The April 29, 1985 hearing upon the Bank's April 5th Motion was continued to May 14, 1985 by agreement of the parties. The court did not conduct any hearing on April 29th and accordingly was unaware that any motion was pending until the Bank's motion was called for a hearing on May 14, 1985.

On April 30, 1985 the Bank filed a "Motion For Approval Of Cash Collateral Agreement And Stipulation" and the same was set for a hearing on May 14, 1985. Again no request was made by the Bank to expedite the hearing on this motion.

When the two pending motions were called for a hearing on May 14, 1985 the debtor announced that it was closing down operations and consented to conversion of the proceedings to a Chapter 7 liquidation. The court accordingly noted that the motion for approval of cash collateral agreement was moot and continued any action on the motion to modify the automatic stay until a Chapter 7 trustee had been appointed and could respond to that motion. On July 2, 1985 the court granted the Bank relief from the automatic stay, to enable it to proceed to collect the receivables, in the absence of any objection by the Chapter 7 trustee.

On August 16, 1985 the Chapter 7 trustee filed the adversary complaint presently pending before the court asserting that the Bank was proceeding to collect not only pre-petition accounts receivable, to which the trustee asserts no claim, but was also collecting post-petition accounts receivable as to which the trustee contends the Bank has no enforceable lien.

▪▪▪ It is clear on these facts that as a strict matter of law the Bank has no enforceable lien against accounts receivable generated by the Chapter 11 debtor-in-possession, even though the debtor-in-possession used the "proceeds" of the pre-petition accounts receivable to generate the post-petition receivables. *In re Texas Tri-Collar, Inc.*, 29 B.R. 724, 8 CBC 2d 970 (Bankr.W. D.La.1983); *In re Gross-Feibel Co., Inc.*, 21 B.R. 648 (Bankr.S.D.Oh.1982); *In re Pigeon*, 49 B.R. 657 (Bankr.D.N.D.1985). It is likewise clear that the debtor-in-possession could not obtain any authorization for the obtaining of further credit and borrowing from the Bank by its own actions in agreement with the Bank. Under the present Bankruptcy Code the obtaining of credit authorization can only occur after creditors have been provided with notice and the court has entered an order authorizing the same. *In re Adamson Co., Inc.*, 29 B.R. 937, 939 (Bankr.E.D.Va.1983). Cf. also *In re Sullivan Ford Sales*, 2 B.R. 350 (Bankr.D.Me.1980); *In re Monarch Circuit Industries, Inc.*, 41 B.R. 859, 862 (Bankr.E.

D.Pa.1984). I also conclude that the debtor-in-possession did not "violate" the provisions of § 363(c)(2), in using the proceeds of the pre-petition receivable collections without a court order, for the simple reason that it had the *actual consent* of the Bank to so use the proceeds. The fact that that consent was conditioned upon a subsequent approval of a stipulated agreement by the court does not take away from the fact that there was such actual consent at least to the degree necessary to vitiate any need for the debtor to obtain an earlier order from the court, at all pertinent times during which the proceeds were being used prior to the conversion of the case to a Chapter 7 liquidation.

If there had been no consent by the Bank for use of the cash collateral, the court might be justified in using its powers under § 105 of the Bankruptcy Code to grant the Bank a "replacement lien" in post-petition receivable collections, notwithstanding the failure to obtain any order authorizing borrowing and attachment of liens under §§ 364 and 552, to give the Bank relief for the debtor's unauthorized use of cash collateral. See *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr.N.D.Tex.1983). Some courts have even held that an administrative priority claim might be granted in such circumstances. See *In re Rankin*, 49 B.R. 565 (Bankr.W.D.Mo.1985). However, as indicated above, there *was* consent in the present case so those authorities do not apply.

The Bank nevertheless contends that this court has the equitable power to validate, retroactively, unauthorized dealing between a debtor-in-possession and a lender. It suggests the court enter a nunc pro tunc order authorizing the borrowing and attachment of liens, in the circumstances. The Bank cites the Second Circuit decision in *In re American Cooler Co.*, 125 F.2d 496 (2nd Cir.1942), in that regard. In that case the court stated:

We think that the judge should not retroactively validate the loan unless he is confident that he would have authorized it if a timely application had been

· made and unless in addition, he is reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction. Of necessity, each case must stand on its own facts, and these criteria cannot be mechanically applied; they should, however, materially facilitate the preparation of an intelligent record. [125 F.2d at p. 497]

The authority of the *American Cooler* case is diminished, however, by the Second Circuit's subsequent decision in *In re Texlon Corp.*, 596 F.2d 1092, 1098–99 (2d Cir.1979), indicating in no uncertain terms its distaste for bankruptcy court orders authorizing attachment of pre-petition liens to post-petition assets without *prior* notice to creditors.

■ Upon reflection I conclude the *American Cooler* result, even if still good authority in the Second Circuit, is not justified in the present case. The current Bankruptcy Code contains provisions which provide an express procedure for obtaining authorization for continued borrowing on a secured basis, i.e., § 364 quoted above. The Code also contains express provision for quick action by the Bankruptcy Court on request of a secured party, with or without notice, to prevent unauthorized use of cash collateral, i.e., § 363(e) quoted above. Finally, a quick preliminary hearing procedure is available for an interim authorization of cash collateral usage, after notice, under § 363(c)(2) quoted above.

In this procedural context, in which relief is available in a matter of days—even hours if the circumstances are urgent—the rationale for permitting retroactive validation orders for secured borrowing and attachment of liens to post-petition transactions no longer exists.[1]

■ Even if *American Cooler* should be applied to the present case, the facts do not establish in this procedural context that the Bank and the debtor "honestly believe[d] that they had authority to enter into the transaction." Both parties were well aware that court approval was required, both with regard to the authority for continued borrowing by the debtor-in-possession, and also with regard to the authorization to permit the floating lien to reach post-petition receivables. And, as indicated above, the use of the cash collateral by the debtor prior to the obtaining of a court order on the stipulated agreement was in fact with the consent of the Bank.

■ The court is not unmoved by the Bank's contention that it is simply "unfair" not to grant it a nunc pro tunc order authorizing the borrowing and lien attachment agreement in circumstances in which the debtor-in-possession in fact received the benefit of the continued financing and use of cash collateral. This contention is all the more appealing inasmuch as the record indicates that at least at the time of trial of this matter the Bank had not yet collected an amount from the receivables collateral in excess of the amount that they would have been able to collect had the debtor ceased operations at the time of the original bankruptcy filing.

To accede to the Bank's equitable arguments, however, would be in effect to rewrite the statute and negate important practical considerations underlying the congressional decision to require *prior* approval of continued financing and lien attachment of floating liens *after* notice to creditors in the reorganization proceedings. While the debtor and lender may well agree to a continued financing arrangement, in order to permit the debtor's business operations to continue, the creditors in a particular case may well be of the view

---

**1.** In a recent instance, in the *Tech Weld Corporation* case pending in this court, a cash collateral application filed at 5 p.m. on Monday, April 14, 1986, when the chapter 11 petition was filed, was heard and acted upon, on a preliminary basis, at a hearing at 9 a.m., Friday, April 18, 1986, after telephonic and written notice as directed by the court. [See Case No. 86–166, Ct. papers Nos. 6, 7, and 8.]

that continued business operation is not in their interest and that liquidation is an appropriate alternative. Cf. *In re Texlon Corp., supra,* at pp. 1098–99. That is of course the whole reason for requiring notice to creditors and approval by the court after such notice and hearing.

The Bank argues that it is likely that the court "would have approved" this financing arrangement had it been brought before the court on notice and hearing prior to the Chapter 7 conversion, and that the court accordingly as an equitable matter should now make that determination upon an appropriate evidentiary showing. However, this again puts the "cart before the horse" in a manner not intended by Congress. It is true that the court could conduct such hearings and make such determinations after an appropriate showing by both the lender and the subsequent Chapter 7 trustee. But this in effect forces the liquidating trustee to expend assets of the estate, otherwise available for distribution to creditors, in engaging in litigation which is necessary only because the Bank did not seek immediate relief and orders authorizing post-petition financing and lien attachment.

The Bank argues further that if the court rules that it will not use its equitable power to in effect grant a replacement lien, for the lien lost by virtue of the failure to obtain appropriate court orders at the time, this in effect will precipitate immediate action by secured lenders in all Chapter 11 proceedings to prohibit use of cash collateral where the debtor-in-possession does not itself initiate action to obtain authorization for the use of such collateral.

The court is aware of the desirability of giving secured lenders and debtors-in-possession an opportunity to negotiate workable arrangements for post-petition financing and lien attachments. However, as indicated above, §§ 363 and 364 of the Code provide a quick and flexible device for obtaining preliminary orders for interim financing arrangements in a matter of hours or days following the filing of a Chapter 11 petition. See also, 2 *Collier on Bankruptcy,* 15th Ed., § 363.04, p. 363–25 *et seq.*

(1985). Such being the case, and the Bank not having availed itself of these available procedural tools to protect its interest in the present case, the court declines to exercise any equitable power it may have in the circumstances. To do otherwise would be to re-write the statute, contrary to its clear intent, to mean that a debtor and secured party can effectively create a valid post-petition transaction, based merely on their own agreement, for however long they choose to delay in bringing the matter before the court.

Accordingly, a judgment will be entered in accordance with the trustee's prayer for relief seeking an accounting for the collection of all post-petition receivables by the Bank, and for turnover of the same. The trustee shall submit a proposed form of judgment in accordance with this opinion within ten days, with notice to the Bank, and the court shall enter the form of judgment five days thereafter unless the Bank requests a further hearing as to the form of judgment.

### CROSS BAKING COMPANY, INC.

The facts in the Cross Baking proceeding present a much more aggravated case of delay in objecting to the use of cash collateral by chapter 11 debtor-in-possession. This occurred in circumstances in which the debtor-in-possession was justified in assuming from the conduct of the secured creditor that it had the approval of the creditor for the continued use of the cash collateral, pending formulation of the plan of reorganization and submission of a cash collateral order by another party also having a lien on the receivables.

The debtor, Cross Baking Company, Inc., filed its chapter 11 petition in this court on June 11, 1980. The case was subsequently adjudicated and converted to a chapter 7 liquidation proceeding on February 19, 1981. In the interim period, there were a number of meetings of creditors in which the debtor outlined its progress in formulating a plan of reorganization, and at which the plaintiff, New Hampshire Business Development Corporation (hereinafter

"NHBDC") took part. NHBDC was encouraging the reorganization effort and was fully aware that the debtor was continuing to use cash collateral comprised of collections on accounts receivable in the course of its operations during the chapter 11 stage of this case.

Here again there were discussions and representations as to the cash collateral order that "was to be entered by the court" between the parties but for various reasons, not relevant here, NHBDC allowed the debtor-in-possession to continue to use the receivable collections without an objection or any request for an expedited hearing and adequate protection order from this court.

The debtor ceased its business operations on January 23, 1981, after it became apparent that its efforts to reorganize would not be successful. NHBDC learned of this event and of the iminent conversion of the case to chapter 7 at that time. On January 28, 1981 NHBDC filed the present complaint asking relief from the automatic stay and for leave to proceed with foreclosure of its blanket security interests covering the accounts receivable of the debtor. Although not captioned as such, this complaint also in its pray for relief in effect requests a determination that NHBDC's security interest would reach post-petition receivable collections held by the debtor or the trustee. NHBDC requested that those defendants be directed to surrender such collateral to the plaintiff. NHBDC also filed on January 28, 1981 a "Motion to Prohibit Debtor's or Trustee's Use of Proceeds" seeking an order to prevent the debtor or trustee from spending the proceeds from any receivables collections and requesting that all future collections be segregated, including "a sum sufficient to cover proceeds of NHBDC's collateral which it heretofore has disposed of." [2]

■ At trial NHBDC attempted to avoid the legal issues discussed above with regard to the *J.L. Graphics* case by arguing that since the debtor-in-possession "must be presumed not to have violated the law" with regard to the use of cash collateral under § 363 of the Code the court must find, contrary to the normal practice, that the debtor applied all payments on running accounts receivable from a particular customer in inverse order, i.e., applying payments received to the *newest* receivable generated as opposed to the *earliest* receivable in that particular account. Since this position is bottomed on the contention that the debtor-in-possession otherwise would be "violating" § 363 it necessarily must fail since the court finds and concludes here, as it did in the *J.L. Graphics* case, that the debtor was justified in proceeding on the basis that it had the actual consent of NHBDC to continue to use the receivables collections pending the eventual submission of a stipulated order to the court. The fact that this consent is implied from NHBDC's conduct, and was in effect conditional upon an ultimate court order being entered, is no more help to NHBDC here than it was to the secured creditor in the *J.L. Graphics* case.

■ Finding that there was no violation of § 363 by the debtor in the present case, the court concludes that the trustee's position on the evidence is correct, i.e., the accounting for receivables collections must be based upon a finding that the debtor-in-possession applied collections to the oldest outstanding receivables pertaining to the account of a particular customer. Unfortunately for NHBDC, this will result in a finding that the great bulk of the collected funds came from the collection of post-petition receivables as to which NHBDC has no enforceable lien. This result again could have been avoided by the secured creditor if it had sought to bring this matter before

2. The complaint and motion were noticed for hearing before the then bankruptcy judge on April 7, 1981. It is not clear whether the hearing was held or completed. No order was ever entered and the matter apparently languished until November 13, 1985 when the trustee sent a letter to the Clerk advising that the case was ready for a final meeting except for this outstanding adversary proceeding. The matter was then set for trial before the undersigned judge.

the court for authorization earlier in the Chapter 11 proceedings.

Since the trustee concedes that a small amount of the cash on hand is attributable to pre-petition receivable collections as to which he has no claim, in view of NHBDC's valid lien as to those collections, the trustee shall submit a proposed form of judgment in accordance with this opinion within ten days, with notice to NHBDC, and the court shall enter the form of judgment five days thereafter unless NHBDC requests a further hearing as to the form of judgment.