COFFIN, Circuit Judge.
 

 This case presents an issue of first impression in this circuit concerning the effect of section 552(b) of the Bankruptcy Code on the rights of a secured creditor holding a floating lien on a debtor’s accounts receivable. Specifically, we must determine whether a secured, lender, who permits a borrower to use cash collateral during reorganization without formally protecting its security interest, is entitled to any portion of the post-petition receivables collected upon liquidation. Both the bankruptcy court and the district court ruled that section 552(b) provides no assistance to a secured creditor in such circumstances. We agree and therefore affirm the judgment of the district court.
 

 I.
 
 Factual Setting.
 

 Cross Baking Company (“Cross”), a Claremont, New Hampshire bakery, experienced financial difficulties during early 1980 and filed a petition for relief under chapter 11 of the Bankruptcy Code on June 11, 1980. At the time of the filing, appellant New Hampshire Business Development Corporation (“NHBDC”)
 
 [1]
 
 held a security interest in the first $50,000 of Cross’ accounts receivable. Another creditor, F.R. Lepage Baking Company (“Lepage”), also held a security interest in the accounts receivable, but its interest was subordinate to that of NHBDC pursuant to an agreement between the two creditors.
 

 Soon after Cross filed for bankruptcy, NHBDC and Lepage agreed to permit Cross to use the cash generated by its
 
 *1029
 
 pre-petition receivables during the reorganization. The record indicates that Le-page’s counsel was to prepare a stipulation and secure a “cash collateral order” from the bankruptcy court which would have permitted Cross to use the cash collateral,
 
 see
 
 11 U.S.C. § 363(c)(2)(B)
 
 [2]
 
 , while simultaneously protecting the creditors’ security interests,
 
 see
 
 11 U.S.C. § 363(e).
 
 [3]
 
 Such an order, for example, could have provided that the creditors’ lien would extend to accounts receivable arising after the commencement of the bankruptcy case or to some other collateral. At no time, however, did either of the secured creditors ever seek or obtain such an order.
 

 Cross operated as a chapter 11 debtor-in-possession for approximately seven months. During this period, payments by Cross’ customers satisfied the outstanding balances on the vast majority of accounts receivable in existence prior to the bankruptcy filing. Cross used this cash in an attempt to reorganize its business. The reorganization effort failed, however, and a trustee was appointed to take over the business on January 9, 1981. Two weeks later, the trustee closed the business and filed a motion with the bankruptcy court to convert the proceedings to a chapter 7 liquidation. NHBDC immediately responded by filing both a complaint for relief from the automatic stay and a motion to prohibit further use of the proceeds of its cash collateral. On February 18, 1981, the bankruptcy court granted the trustee’s chapter 7 conversion motion.
 

 Subsequently, the trustee began to liquidate all of Cross’ accounts receivable, most of which arose
 
 after
 
 the filing of the bankruptcy petition. NHBDC sought to recover up to $50,000 of these funds in accordance with its pre-petition security interest in Cross’ receivables. The bankruptcy court issued its decision regarding NHBDC’s claims on May 8, 1986, 62 B.R. 750, holding that Cross, by using the cash generated by the pre-petition receivables, had acted permissibly in light of NHBDC’s actual consent to such use and that NHBDC had no right to any of the sums collected on the post-petition accounts. The district court affirmed the decision, opining that neither the Code nor the “equities of the case” entitled NHBDC to relief in this instance. This appeal ensued.
 

 II.
 
 Section 552(b) and the Nature of NHBDC’s Claim.
 

 Section 552 of the Bankruptcy Code concerns the post-petition effect of security interests. 11 U.S.C. § 552. Its purpose is to prevent a creditor’s pre-petition security interest in “after-acquired property” (a “floating lien”), such as NHBDC’s interest in Cross’ receivables, from attaching to property acquired by the estate or debtor-in-possession
 
 after
 
 the filing of a bankruptcy petition.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 376-77 (1977)
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6332-33 (“House Report”); S. Rep. No. 989, 95th Cong., 2d Sess. 91 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5877 (“Senate Report”). Section 552(a) plainly states this general rule: “[Pjroperty acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case.” 11 U.S.C. § 552(a).
 

 Section 552(b), however, states the lone exception to the general rule of subsection (a):
 

 Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this
 
 *1030
 
 title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
 

 11 U.S.C. § 552(b). It is this language regarding the post-petition treatment of “proceeds” on which NHBDC bases its claim in the instant case.
 

 NHBDC, stressing the limited nature of its claim, seeks only to recover up to $50,-000 of the money collected by the trustee upon liquidation which it contends must constitute the proceeds of the pre-petition receivables, its original collateral. It has repeatedly noted the ease with which the amount of proceeds collected by the trustee, and arguably owed to it, can be calculated.
 
 [4]
 
 The trustee disputes not the simplicity of the calculation, but rather the very existence of NHBDC’s claim to a portion of the funds collected on post-petition receivables.
 

 In its brief, NHBDC illustrates the scope of its claim by discussing three distinct categories of accounts receivable. Regardless of category, all of the accounts at issue share the common characteristic of having an outstanding balance on the date of Cross’ bankruptcy filing. The first category comprises those accounts which experienced no additional post-petition charges and whose pre-petition balances were never fully paid during reorganization. The parties agree that NHBDC is entitled to any sums subsequently collected on these accounts and the trustee has apparently already paid to NHBDC the small amount of cash fitting this description.
 

 The other two categories of accounts receivable described in NHBDC’s brief, however, have sparked considerable controversy between the parties. Both disputed categories contain accounts which not only had an outstanding balance on the date of the bankruptcy filing, but which also experienced payments and additional charges during the course of the chapter 11 proceeding. The first disputed category involves those accounts for which the customer’s payments during the chapter 11 proceeding
 
 exceeded
 
 its purchases. For example, an account would fall within this category if a customer owed Cross $2000 at the time of filing, and then made new purchases totalling $5000 and payments total-ling $6000 during the reorganization. NHBDC contends that it should receive the entire amount collected on such accounts during liquidation (an amount that could reach $1000) because the trustee would already have been made whole (all charges incurred during the reorganization would have been paid) and the collection would necessarily represent the pre-petition receivable.
 

 The second disputed category concerns those accounts for which the customer’s post-petition payments on the account were
 
 less than
 
 the amount of additional charges incurred during the chapter 11 proceeding. For example, this category would include accounts with a $2000 balance at the time of filing, $5000 of subsequent new purchases, and only $4000 of payments during the reorganization. On these accounts, NHBDC claims not the entire amount collected by the trustee on liquidation, but only the amount by which the collected funds exceed the balance owed on new purchases during the chapter 11 proceeding. In other words, if the trustee liquidated the account described above and collected the entire $3000 balance, NHBDC claims only the $2000 that remains after the collected funds are applied against the $1000 balance owed for goods purchased
 
 *1031
 
 during reorganization. To rule otherwise, claims NHBDC, would be to create a windfall gain in favor of the trustee and the unsecured creditors he represents.
 

 The legal arguments identified in NHBDC’s cursory brief are blended together in a fairly haphazard manner. Nevertheless, we believe it is possible to distill two distinct lines of argument, both of which are designed to support NHBDC’s claim for recovery of a portion of the liquidated post-petition receivables. First, there is an argument that we should consider a portion of the money collected by the trustee to be the actual proceeds of the pre-petition accounts, NHBDC’s original cash collateral. Second, there is a contention that, even if the collected funds are not actually the proceeds of the original collateral, equitable considerations favor our treating part of the collected money as representing the proceeds to which NHBDC’s security interest should continue to attach. We treat each argument in turn.
 

 III.
 
 Proceeds.
 

 The first argument focuses on the language in section 552(b) that extends a creditor’s pre-petition security interest to any proceeds of its collateral acquired by the debtor after the commencement of the bankruptcy proceeding. The premise of this argument is an assumption regarding how Cross must have conducted its business during the course of the chapter 11 proceeding. As discussed above, section 363(c)(2) of the Code permits a debtor-in-possession to use cash collateral only if all creditors holding a security interest in the collateral have consented
 
 or
 
 the court has issued an order authorizing such use. 11 U.S.C. § 363(c)(2).
 
 [5]
 
 NHBDC does not contest the bankruptcy court’s finding, affirmed by the district court, that it consented to Cross’ use of the cash collateral during the attempted reorganization, but it highlights the fact that the bankruptcy court found this consent to be “conditioned upon a subsequent approval of a stipulated agreement by the court.” Although both lower courts rejected the suggestion that the conditionality of NHBDC’s consent affected the validity of Cross’ use of the cash collateral, NHBDC now argues — without directly challenging the legal conclusion of the courts below — that the absence of unconditional consent demands a different result.
 

 Because it offered only conditional consent to the use of the cash collateral, NHBDC urges us to infer that Cross, in an effort to avoid a section 363(c)(2) violation, must have purposefully segregated the proceeds of its pre-petition accounts by “billing its customers and collecting from them on a current basis.” In other words, NHBDC would have us assume that, during the pendency of the reorganization effort, Cross first applied payments on accounts to the outstanding balances on receivables that arose
 
 after
 
 the bankruptcy filing. Only if a payment exceeded the balance of the post-petition account would Cross credit a portion of the payment against the balance owed on the pre-petition account.
 

 This argument is a resourceful attempt to identify a large portion of the cash collected by the trustee during liquidation as the proceeds of the pre-petition receivables, but we cannot endorse such an approach given the circumstances of this case. The bankruptcy court concluded, and we wholeheartedly agree, that Cross was “justified in proceeding on the basis that it had the actual consent of NHBDC to use the receivables collections pending the eventual submission of a stipulated order to the court.” In short, NHBDC’s conditional consent did not create the risk of a section 363(c)(2) violation if segregation did not occur. Because Cross was never in danger of violating the statute, it makes no sense to presume that Cross followed a method of accounting that flies in the face of the typical business practice of applying payments to the earliest receivable. Accordingly, we believe that the inference urged by NHBDC is inapposite.
 

 
 *1032
 
 We also note that the “condition” placed on NHBDC’s consent — the issuance of a stipulated “cash collateral order” — was at all times within the control of NHBDC, even though counsel for Lepage had assumed the primary responsibility of ensuring that the order was issued. Like the district court, we cannot excuse NHBDC’s failure to procure the necessary order simply because it “chose to rely on Lepage to do its work for it.” Indeed, counsel for NHBDC conceded at oral argument that “all parties were somewhat at fault” for the failure to obtain it. We therefore conclude that there is no merit in NHBDC’s argument that its conditional consent requires us to find that the money collected by the trustee constitutes the proceeds of the pre-petition receivables.
 

 In sum, NHBDC’s consent permitted Cross to spend (and lose) the proceeds of NHBDC’s cash collateral that were paid to the business during the attempted reorganization. As we noted earlier, the amount paid on virtually every account during reorganization equalled or exceeded the balances owed at the time Cross filed its bankruptcy petition. Thus, the bankruptcy court correctly found that all of the money at issue in this case (except for the small amount which the trustee concedes to be payments on pre-petition receivables) was collected in satisfaction of receivables that arose
 
 after
 
 the filing of a bankruptcy petition. Such post-petition receivables generally do not constitute “proceeds” of pre-petition receivables under section 552(b),
 
 see First National Bank of Lafayette v. Texas Tri-Collar, Inc.,
 
 29 B.R. 724, 727 (Bankr.W.D.La.1983), and the arguments offered by NHBDC do not persuade us otherwise. Accordingly, we hold that the “proceeds” net cast by section 552(b) fails to capture the cash generated by Cross’ post-petition receivables.
 
 [6]
 

 IV.
 
 Equitable Considerations.
 

 The second type of argument set forth by NHBDC traces the language found in the proviso at the end of section 552(b): "... except to any extent that the court, after notice and a hearing and
 
 based on the equities of the case,
 
 orders otherwise.” 11 U.S.C. § 552(b) (emphasis supplied). NHBDC contends that this language enables us to weigh the equities of the case and rule in its favor, despite our finding that the funds collected by the trustee are not the actual proceeds of the pre-petition receivables. NHBDC asserts that the equities of the case counsel in favor of continuing its security interest in that portion of the post-petition receivables that must
 
 represent
 
 the proceeds of its original cash collateral because, were we to rule otherwise, the trustee would be unjustly enriched.
 

 It appears that both lower courts accepted the interpretation of section 552(b) urged by NHBDC, but ruled that the equities of the case favored the trustee, not NHBDC. Both courts’ analysis of the equities focused on the plight of the unsecured creditors, who may have preferred liquidation, but were disadvantaged by lack of formal notice regarding the arrangement to permit Cross’ use of the cash collateral and continue NHBDC’s lien on post-petition receivables. NHBDC responds to such reasoning by noting, correctly, that Lepage, which was instrumental in the formulation of the “cash collateral” plan, served as the clerk of the committee of unsecured creditors. Thus, argues NHBDC, lack of formal notice could not have prejudiced the unsecured creditors because they were duly represented by Le-page.
 

 We express no opinion as to how the scales of equity should tip in this instance because we believe that the approach advocated by NHBDC, and apparently employed by both lower courts, is unfaithful to both the language of section 552(b) and the intentions of its drafters. Section 552(b) states the rule regarding the post-petition treatment of
 
 proceeds
 
 and permits an adjustment of a creditor’s security interest
 
 *1033
 
 in
 
 proceeds
 
 if the equities of the case demand it. It is not a general grant of equitable power permitting a court to correct a secured creditor’s errors by recognizing a security interest in non-proceeds, such as the money collected by the trustee in this case.
 
 See
 
 4
 
 Collier on Bankruptcy
 
 ¶ 552.-01, at 552-3 n. 3 (15th ed. 1987) (“Neither the general rule of section 552(a) nor the exception of section 552(b) is subject expressly to the broad powers of the court under section 105(a).”).
 

 We have found the legislative history to be particularly helpful in determining the scope of the equitable powers outlined in section 552(b). The report of the Senate Judiciary Committee states that the proviso in section 552(b) is designed to cover
 

 the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the fund available for general unsecured creditors, but is limited to the benefit inuring to the secured party thereby.
 

 Senate Report,
 
 supra,
 
 at 91,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5877. Although the final version of section 552(b) emerged as a compromise between the Senate amendment and the original House bill, we note that the report of the House Judiciary Committee on the original bill does not differ significantly from the Senate Report on the precise point which concerns us today.
 
 See
 
 House Report,
 
 supra,
 
 at 377,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5963, 6333. We can only conclude from our reading of these reports that the “equities of the case” proviso is a legislative attempt to address those instances where expenditures of the estate enhance the value of proceeds which, if not adjusted, would lead to an unjust improvement of the secured party’s position. In such cases Congress intended for courts to limit the secured party’s interest in the proceeds according to the equities of the case so as to avoid prejudicing the unsecured creditors. Nothing in the legislative history implies that the “equities of the case” proviso should be read more broadly to encompass the meaning favored by NHBDC.
 

 Recent commentary concerning section 552(b) also buttresses our interpretation of the “equities of the case” proviso:
 

 The flexible approach taken by section 552(b) permits the court to preserve valid security interests in proceeds, rents and the like, but at the same time, allows the court to protect the interests of unsecured creditors. If a creditor’s collateral is processed and sold or proceeds are otherwise collected, either the creditor or the trustee, debtor, or debtor in possession may request a noticed hearing to have the court determine whether the creditor’s interest in proceeds should be limited based on the equities of the case. Depending on the court’s evaluation of these equities, profit or loss may be given to the estate or to the secured party, or apportioned between the estate and the secured party.
 

 4
 
 Collier on Bankruptcy
 
 ¶ 552.02, at 552-10, -11 (15th ed. 1987) (footnotes omitted). We therefore believe that it is incorrect to consider the equities of the case when the contested property, as in the case at bar, does not constitute proceeds of the secured creditor’s original collateral.
 

 NHBDC cites four recent cases which, it contends, support its reading of section 552(b).
 
 See In re Trans-Texas Petroleum Corp.,
 
 33 B.R. 67 (Bankr.N.D.Tex.1983);
 
 Marine Bank v. Sigma-4 Express, Inc.,
 
 31 B.R. 5 (Bankr.W.D.Pa.1983);
 
 Citizens Fidelity Bank & Trust Co. v. All-Brite Sign Service Co.,
 
 11 B.R. 409 (Bankr.W.D.Ky.1981);
 
 Florida National Bank of Miami v. Havee (In re S & Z International Management, Inc.),
 
 10 B.R. 580 (Bankr.S.D.Fla.1981). According to NHBDC, these cases favor the retroactive exercise of equitable power to excuse a secured creditor’s failure to protect its interest by procuring a court order either mandating segregation of the proceeds or continuing its lien on post-petition receivables.
 

 All of the cited cases, however, involve secured creditors’ attempts to recover
 
 proceeds
 
 of pre-petition receivables which were acquired after the commencement of
 
 *1034
 
 the chapter 11 proceeding and commingled with other assets of the debtor. Thus, these cases are factually distinguishable from the instant case, in which none of the contested funds are proceeds of the pre-pe-tition receivables. Indeed the bankruptcy court in the
 
 Havee
 
 case recognized that the legislative history of section 552(b) limited the scope of its equitable power to cases in which it was necessary “to make provision for an increase in the value of collateral created by the estate at the estate’s expense, and which thus depletes the fund available for general unsecured creditors.”
 
 Havee,
 
 10 B.R. at 582 n. 1.
 
 [7]
 
 It is with good reason, therefore, that we decline NHBDC’s invitation to consider the balance of the equities in this case.
 

 Y.
 
 Conclusion.
 

 As the bankruptcy court found, NHBDC permitted Cross to use the cash generated by the pre-petition receivables for the purpose of mounting a difficult reorganization effort. NHBDC had ample opportunities to obtain a cash collateral order continuing its lien on post-petition receivables or to insure that collections of pre-petition receivables during reorganization would be segregated, but it neglected to take action in a timely fashion. Despite this admitted failure to protect its own interest by following the procedures set forth in the Code,
 
 see
 
 11 U.S.C. § 363, NHBDC now wishes to have us proceed as if it had meticulously observed the Code’s procedures at the outset. For the reasons detailed above, we are unable to sanction NHBDC’s
 
 post hoc
 
 theory of recovery and we therefore conclude that section 552(b) does not entitle NHBDC to any portion of the monies collected on post-petition receivables by the trustee durjng liquidation.
 

 The judgment of the district court is affirmed.
 

 [1]
 

 . NHBDC is a legislatively chartered consortium of banks which accepts loans considered too risky to be handled by ordinary banks.
 

 [2]
 

 . Section 363(c)(2) provides:
 

 (c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
 

 (A) each entity that has an interest in such cash collateral consents; or
 

 (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
 

 11 U.S.C. § 363(c)(2).
 

 [3]
 

 . Section 363(e) provides:
 

 (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.
 

 11 U.S.C. § 363(e).
 

 [4]
 

 . The calculation is simple, at least in part, because the parties have access to records that detail the outstanding balance of each account on the date Cross filed for bankruptcy and the total amounts-subsequently charged to and collected on each account.
 

 [5]
 

 . In the absence of consent or a court order, Cross’ failure to segregate or otherwise preserve the proceeds of the pre-petition receivables would violate section 363(c)(2) and arguably entitle NHBDC to a portion of the liquidated post-petition receivables.
 

 [6]
 

 . As one commentator has remarked, section 552(b) "creates an exception for
 
 proceeds generated by prepetition collateral,
 
 and not for property acquired by the debtor or the estate postpetition or proceeds of the same.” 4
 
 Collier on Bankruptcy
 
 ¶ 552.02, at 552-7 (15th ed. 1987).
 

 [7]
 

 . The bankruptcy court in the
 
 Texas Tri-Collar
 
 case, cited by the trustee, expressed a similar sentiment:
 

 Section 552(b) ... only allows the court, "based on the equities of the case," to vary the extent to which a prepetition security interest attaches to proceeds, product, offspring, rents, or profits of prepetition property.
 

 Texas Tri-Collar,
 
 29 B.R. at 727.