**6**

In re PHOTO PROMOTION
ASSOCIATES, INC., Debtor.

Jeffrey L. SAPIR, Trustee in Bankruptcy of Photo Promotion Associates,
Inc., Plaintiff–Appellee,

v.

C.P.Q. COLORCHROME CORP., A DIVISION OF COPPINGER COLOR
LAB., Defendant–Appellant.

No. 1014, Docket 89–5002.

United States Court of Appeals,
Second Circuit.

Argued April 12, 1989.

Decided Aug. 1, 1989.

Richard S. Toder, New York City (Andrew D. Gottfried, Neil E. Herman, Seth B. Shapiro, Zalkin, Rodin & Goodman, New York City, of counsel), for Defendant–Appellant.

Leonard Schwartz, New York City (Siegel, Sommers & Schwartz, New York City, of counsel), for Plaintiff–Appellee.

Before NEWMAN, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal from a December 5, 1988 order of the United States District Court for the Southern District of New York (Goettel, J.), affirming decisions of the Bankruptcy Court (Schwartzberg, J.) dated July 15 and August 25, 1988, we consider what effect a creditor's entering into a contract with a debtor in possession for their mutual advantage and in disregard of the United States Bankruptcy Code (Code) has on the creditor's status in the bankrupt estate. We must decide whether appellant, as a valid creditor, can be forced to pay back post-petition funds it collected under an unauthorized assignment of the debtor's accounts receivable and whether it can then be relegated to pursuing an administrative claim for the services it clearly rendered—a claim that would be subordinate to those of other creditors with priority status. To state the question more precisely, we consider the following: Whether a trustee may, pursuant to 11 U.S.C. §§ 549(a) and 550(a) of the Code, compel a Chapter 11 creditor who violates 11 U.S.C. § 364(c) to return to the debtor's estate the $81,296.75 obtained as a consequence of that violation. We hold that the trustee may obtain the return of those monies even though the creditor has a valid administrative claim under § 503(b). Consequently, we affirm.

## I FACTS

The facts are largely uncontroverted and may be briefly stated. The debtor in this bankruptcy proceeding is Photo Promotion Associates, Inc. (Photo Promotion or PPA), a New York corporation. Its business consisted of selling family and individual photographs mounted on wooden plaques to department store customers. Appellant CPQ Colorchrome Corp. (CPQ), a division of Coppinger Color Lab, is a Tennessee corporation that develops film and photographs.

After filing for Chapter 11 protection on October 4, 1984 Photo Promotion, in continuing its business as the debtor in possession, needed photographic processing services. During the pendency of the Chapter 11 proceeding, and prior to conversion to a Chapter 7 liquidation proceeding, it entered into an agreement with CPQ on December 20, 1984 to procure the necessary services. In return for the services provided by CPQ, Photo Promotion assigned a portion of its accounts receivable to be paid directly to CPQ by the debtor's customers. This spared CPQ from looking to Photo Promotion for payment, a risk CPQ was unwilling to take given the debtor's precarious finances. The December 20 agreement stated that Photo Promotion "agree[d] to protect the parties to the assignment by placing the name and address of 'CPQ' [rather than Photo Promotion] on the first and each 'C.O.D.' remittance direction slip shipped...."

Further, the parties established a post office box in Monsey, New York under the name "PPA Reorder Department or Division," which was under the control of CPQ. Remittances sent to Photo Promotion there were then forwarded to CPQ for deposit in its Cleveland, Tennessee bank account. In an affidavit, CPQ's Vice President for Marketing explained the payment system: "We ended up designating to be paid directly to [CPQ] an amount of the C.O.D. charges which PPA made to its customers which would equal 150% of our charges to PPA. This was done as a substitute to a C.O.D. delivery to PPA which at that time did not have cash to pay us. We used 150% of our charges under the assumption that as many as 1/3 of the orders would be rejected by the customer because of delay. Any surplus we received would have been turned back to PPA." This arrangement lasted from late 1984 through April, 1985.

On March 13, 1985 the Chapter 11 proceeding was converted to a Chapter 7 liquidation case and a trustee was appointed. Nine months later, the trustee initiated proceedings against CPQ to annul the post office box arrangement and to recoup the funds that CPQ had already obtained. In

its counterclaim, CPQ asserted an administrative claim for the photographic processing services it had rendered. On April 30, 1987 the bankruptcy court held that the December 20 agreement violated § 364(c) of the Code, and that CPQ therefore did not have a secured interest in the debtor's accounts receivable. On August 19, 1987 the parties entered a court approved stipulation (the 1987 stipulation) construing the bankruptcy court's earlier decisions; the import of the stipulation—to be discussed later—is disputed. Because the April 30 decision rendered CPQ an unsecured creditor, it appealed. A year later, without either affirming or reversing, the district court remanded the case to the bankruptcy court for clarification of CPQ's status and a determination of whether, having failed to satisfy § 364(c), CPQ could "fall back" to state an administrative claim incurred in the ordinary course of business under § 364(a).

Following a hearing, the bankruptcy court on July 1, 1988 rejected the § 364(a) "fall back" argument, but held that because CPQ had rendered post-petition services to preserve the debtor's estate it was entitled to assert an administrative claim under § 503(b)(1)(A), subject to super-priority expenses incurred during the Chapter 7 proceeding. 87 B.R. 835 (Bkrtcy.S.D.N.Y. 1988). The bankruptcy court further held that before it could assert its § 503(b) claim, CPQ was first required to return to the trustee those monies that it had obtained by means of the post office box arrangement. In addition, the court found that the trustee could challenge the amount of the administrative expenses CPQ claimed by disputing the quality of the services CPQ rendered. By an order entered on December 5, 1988 the district court affirmed the bankruptcy court's decisions and orders. This appeal followed.

## II DISCUSSION

### A.

We begin by considering those sections of the Bankruptcy Code implicated in this appeal. The provision of the Code that CPQ was found to have violated is 11 U.S.C. § 364(c), which provides: "If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of [secured/priority] credit or the incurring of debt." Section 503(b)(1)(A) of the Code, under which CPQ subsequently was held to have an administrative claim, makes reimbursable post-petition administrative expenses after notice and a hearing—claims that represent "the actual, necessary costs and expenses of preserving the estate." The trustee sued CPQ under 11 U.S.C. § 549(a)—a provision that concerns post-petition transactions—which states the rule that a trustee "may avoid a transfer of property of the estate— (1) that occurs after the commencement of the case; and ... (2)(b) that is not authorized under this title or by the court." That rule is subject to narrow exceptions set forth in § 549(b) and (c) that by their own terms do not apply to this case. Finally, § 550(a) gives the trustee a mechanism for recovering transferred property from the transferee in transactions that were avoided under § 549(a).

Given the esoteric nature of this corner of bankruptcy law, it is helpful to note what is *not* at issue. CPQ concedes that its transaction was not authorized by § 364(c). The trustee does not cross-appeal from the holding that CPQ may assert an administrative claim under § 503(b), though under the terms of the 1987 stipulation the trustee disputes the amount of that claim. The question before us, therefore, is whether the avoidance and recoupment provisions of §§ 549(a) and 550(a) have application to funds paid out by a debtor—though unauthorized by § 364(c)—that were received by a § 503(b) creditor. The answer to that question, as the discussion that follows indicates, is "yes."

Foremost, of course, is the broad discretion a bankruptcy judge has in applying §§ 549(a) and 503(b). *See* 4 L. King, *Collier on Bankruptcy* ¶ 549.03, at 549–10 (1989) (*Collier*) (stating that the avoidance provision of § 549(a) "suggests there is

room for judicial discretion in the protection of post-petition transactions"); 3 *id.* ¶ 503.01, at 503–5 ("The timing of payment of [§ 503(b) claims] appears to be clearly within the discretion of the bankruptcy court."). Requiring CPQ to first remit the funds it obtained in violation of § 364(c) before making a claim for payment under § 503(b) is not an abuse of that discretion.

CPQ acknowledges that it is well-settled that § 549(a) permits a trustee to avoid unauthorized transactions. But because the courts below found it eligible for § 503(b) administrative expense status, CPQ argues that its expenses were in fact authorized by § 503(b) of the Code, and by the bankruptcy court in its decision on July 1, 1988 that held that CPQ could assert a § 503(b) claim. Although ingenious, this argument is unpersuasive.

Its underlying assumption is that the bankruptcy court's July 1, 1988 decision, as affirmed by the district court, *retroactively* authorized payments that CPQ had received via the post office box arrangement from late 1984 through April of 1985. What it overlooks, as is evident from the bankruptcy and district court opinions, is that neither court made such a ruling. On the contrary, both courts dictated the course of events that would flow from their holdings, that is, the trustee could first avoid and recoup pursuant to §§ 549(a) and 550(a) the unauthorized funds received by CPQ, and then CPQ could assert its § 503(b) administrative expense claim. This is clear from the bankruptcy court's opinion: "*After* Colorchrome [CPQ] remits the collected funds to the trustee, the unpaid balance of its claim for processing and shipping the debtor's orders may be asserted as an administrative expense [under § 503(b)(1)(A)]...." (emphasis added). Similarly, the district court read the bankruptcy court's holding as compelling CPQ to "remit to the estate those monies collected pursuant to the invalidated security agreement, *after which time* it could assert its 503(b) claim...." (emphasis added). To read those decisions that conferred § 503(b) status upon CPQ as retroactively authorizing its receipt of the accounts receivable erroneously puts the cart before the horse.

■ Although a court may authorize administrative expenses retroactively when the equities of the situation require it, such authorization should only be granted in "unusual circumstances." *See Wolf v. Nazareth Fair Grounds & Farmers' Mkt., Inc.*, 280 F.2d 891, 892 (2d Cir.1960) (per curiam); *see also In re American Cooler*, 125 F.2d 496, 497 (2d Cir.1942) ("We should emphasize that this equitable power must be cautiously exercised, and that only a foolhardy lender will attempt to make it serve as a substitute for the proper authorization."). The reason that retroactive authorizations are disfavored is that they circumvent Congress' determination that before a court authorizes a post-petition transfer, prior notice must be given to creditors. *See Bezanson v. Indian Head Nat'l Bank (In re J.L. Graphics, Inc.)*, 62 B.R. 750, 755 (D.N.H.1986), *aff'd*, 818 F.2d 1027 (1st Cir.1987); *cf. Miner v. Albany State Bank (Matter of Carlson)*, 55 B.R. 124, 125 (W.D.Mo.1985) (avoiding transaction under § 549(a) because "*advance* authorization of the bankruptcy court is necessary if post-petition payments are to be made on pre-petition debts") (emphasis in original).

■ Whether to grant or deny retroactive authorization requires an ad hoc assessment of the facts and equities of each case. *See In re American Cooler*, 125 F.2d at 497. The equities of this case—particularly CPQ's self-enhancing use of the post office box at the expense of other creditors and without prior consultation with those creditors or the court—weigh heavily against retroactive authorization. The actions of CPQ and Photo Promotion and the terms of the December 20 agreement strongly suggest that the parties knew that the arrangement was unauthorized by the Code, otherwise they would not have concealed it. *See id.* (stating that before retroactively authorizing a loan, a judge should "take into account as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction"); *see also In re J.L. Graphics, Inc.*,

62 B.R. at 755. Moreover, Photo Promotion confronted no emergency that required it to transfer its accounts receivable to CPQ quickly before an application could be made to the court for leave to assign these accounts. *See In re Avorn Dress Co.,* 79 F.2d 337, 338 (2d Cir.1935); *In re J.L. Graphics,* 62 B.R. at 755.

Plainly, it is more equitable to other creditors to insist that CPQ first return the funds it obtained. After that, CPQ must then wait in line with the other § 503(b) creditors—who cannot be paid until after Chapter 7 creditors with superior claims have been paid—for its pro rata share. The district court thought it unlikely that § 503(b) creditors will be paid 100 cents on the dollar, and predicted that whatever payment they receive from the debtor's estate would be delayed. Hence, if CPQ were allowed to retain the $81,296.75, it would be receiving full payment, or more than its likely pro rata share. In addition, it would have had the use of the present value of this money while other equally deserving creditors would have been forced to wait. Obviously, CPQ should not obtain such a windfall for its failed attempt at an end-run around § 364(c).

Nonetheless, we recognize that CPQ did render valuable service to the debtor. It is important to note that CPQ should not and is not being denied all payment for those services. Though the amount and timing of its claim remain to be determined, CPQ will be paid under § 503(b), so there is likewise no danger of unjust enrichment to the bankrupt estate.

CPQ's reliance on *In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562 (M.D.N.C. 1986) does not suggest a contrary result. That case held that funds disbursed to creditors under a court-approved reorganization plan could not be recaptured after the case was converted to a liquidation proceeding. In contrast, the private arrangement embodied in the December 20 agreement between CPQ and Photo Promotion was not analogous to a valid court-approved reorganization plan. Again, the *Kaleidoscope* court limited its holding by indicating that recapture could be appropri-

ate in unusual circumstances, even if the funds had been paid with prior court approval. *Id.* at 565.

Having failed to create an exception to avoidance and recoupment from its status as a § 503(b) creditor, CPQ is subject to the general rule of § 549(a) "favoring the trustee's power of avoidance." *See In re Ward,* 837 F.2d 124, 127 (3rd Cir.1988) (citing 4 *Collier* ¶ 549.02, at 549–6 (discussing the "very narrow" exceptions to § 549(a) embodied in § 549(b) and (c))).

■ CPQ raises an alternative argument that merits little discussion. It contends that even if § 503(b) administrative creditors may be compelled to disgorge funds under §§ 549 and 550, singling it out as the only administrative creditor forced to return money to the estate is discriminatory and violative of the principle that administrative expense creditors are statutorily on a parity with one another. CPQ does appear to be the only entity with a § 503(b) claim presently being ordered to make a §§ 549(a) and 550(a) remittance to the debtor's trustee. But so far as we can discern, it is also the only entity to have established a post office box to receive the debtor's accounts receivable without prior court authorization. Its disparate treatment stems from its disparate conduct. Hence, CPQ's contention of discrimination is rejected.

### B.

■ CPQ also asserts that the courts below disregarded or misconstrued the court-approved 1987 stipulation between it and the trustee which, according to CPQ, fixed the amount of its administrative claim. The stipulation states in pertinent part that an order be entered

(ii) granting allowance of a general unsecured claim to defendant [CPQ] in the sum of $126,492.89 . . . , and provided defendant makes payment to plaintiff of $81,296.75, defendant's general unsecured claim shall be deemed increased and allowed in the aggregate amount of $207,789.64; and

(iii) this Stipulation shall not be deemed a settlement of this adversary proceeding but rather a resolution of fac-

tual issues with respect to the amount of the Artisan's Lien and provided further that nothing herein shall in any way constitute a waiver of any right of appeal by either party with respect to any issue in this adversary proceeding.

The district court and the bankruptcy court both read the stipulation to mean that CPQ's administrative claim "remains just that, a claim, and it is subject to the normal challenges that may be raised by the trustees ... as to offsets and quality disputes." The trustee similarly asserts that the stipulation merely determined the amount of money CPQ inappropriately took—those funds not protected by an artisan's lien and Chapter 7 order, matters unrelated to this appeal. The trustee maintains that it can still dispute the amount of CPQ's § 503(b) administrative claim. Accordingly, he seeks to reduce that claim on the grounds that CPQ performed its services inadequately. He alleges that many of Photo Promotion's customers returned their purchases because CPQ did not send the correct plaques.

Initially, we observe that the bankruptcy court first held that CPQ could make a § 503(b) administrative claim on July 1, 1988. The 1987 stipulation antedated this ruling and does not even mention § 503(b) claims, but discusses instead "general unsecured claim[s]," entitled to less priority than a § 503(b) administrative claim. *See* 3 *Collier,* ¶ 503.03. Hence, the stipulation is arguably of only limited relevance at this point in the litigation. Insofar as the stipulation is pertinent, the holdings of the bankruptcy and district courts comport with its plain wording. Clearly, nothing in the stipulation expressly precludes the trustee from challenging the quality of CPQ's services and disputing the amount of CPQ's administrative claim. Further, the final clause of the stipulation that "nothing herein shall in any way constitute a waiver of any right of appeal by either party with respect to any issue" is broad enough to allow the trustee to assert its defense.

### III  CONCLUSION

For the reasons stated, the determination of the district court that affirmed the bankruptcy court's orders is affirmed. The trustee's application for sanctions in the form of interest, costs, and attorney's fees for appellant's alleged filing of a frivolous appeal is denied as being without merit.

Order affirmed.